FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 19, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MEVLIJA J.,<br><br>　　Plaintiff,<br><br>　　v.<br><br>KILOLO KIJAKAZI,<br>ACTING COMMISSIONER OF<br>SOCIAL SECURITY,<br><br>　　Defendant. | No. 4:20-CV-05143-JAG<br><br>ORDER GRANTING<br>DEFENDANT'S MOTION<br>FOR SUMMARY JUDGMENT |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF No. 21, 26. Attorney Chad Hatfield represents Mevlija J. (Plaintiff); Special Assistant United States Attorney Heidi L. Triesch represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 6. After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

## I.    JURISDICTION

Plaintiff protectively filed applications for Disability Insurance Benefits and Supplemental Security Income on November 17, 2016 alleging amended date of disability beginning November 1, 2015.[1] Tr. 15-16, 221-27, 228-34. The

---

[1] At the hearing, through her representative, Plaintiff amended her alleged onset date of disability from August 1, 2005 to November 1, 2015. Tr. 15. As her

1  applications were denied initially and upon reconsideration. Tr. 135-37, 138-41.
2  Administrative Law Judge (ALJ) Lori Freund held a hearing on January 17, 2019,
3  Tr. 35-78, and issued an unfavorable decision on July 26, 2019. Tr. 12-30. Plaintiff
4  requested review by the Appeals Council and the Appeals Council denied the
5  request for review on June 16, 2020. Tr. 1-6. The ALJ's July 2019 decision
6  became the final decision of the Commissioner, which is appealable to the district
7  court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review
8  on August 18, 2020. ECF No. 1.

## II. STATEMENT OF FACTS

The facts of the case are set forth in detail in the transcript of proceedings and only briefly summarized here. Plaintiff was born in 1974 and was 41 years old on the alleged onset date. Tr. 23. She completed 12 years of education in Bosnia. Tr. 345, 953.

## III. STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable interpretation of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v.*

---

date last insured was in 2011, she was no longer entitled to a period of disability and disability insurance benefits under Title II, and the ALJ dismissed her Title II claim. Tr. 15-16, 25.

*Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097; *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## IV.   SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four the claimant bears the burden of establishing a prima facie case of disability. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that a physical or mental impairment prevents the claimant from engaging in past relevant work. 20 C.F.R. § 416.920(a)(4). If a claimant cannot perform past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show (1) that Plaintiff can perform other substantial gainful activity and (2) that a significant number of jobs exist in the national economy which Plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1497-1498 (9th Cir. 1984); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012). If a claimant cannot make an adjustment to other work in the national economy, the claimant will be found disabled. 20 C.F.R. § 416.920(a)(4)(v).

## V.   ADMINISTRATIVE FINDINGS

On July 26, 2019 the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act. Tr. 12-30.

At **step one**, the ALJ found Plaintiff had not engaged in substantial gainful activity since November 1, 2015 the amended alleged onset date. Tr. 18.

At **step two**, the ALJ determined Plaintiff had the following severe impairments: major depressive disorder, generalized anxiety disorder, and degenerative disc disease of the lumbar spine. *Id.*

At **step three**, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 19.

The ALJ assessed Plaintiff's Residual Functional Capacity (RFC) and found she could perform sedentary work, but with the following limitations:

> [S]he could lift/carry up to five pounds frequently. She could sit for eight hours in an eight-hour workday and stand/walk for up to thirty minutes at one time for a total of two hours in an eight-hour workday. She could never climb ladders, ropes, or scaffolds and could occasionally climb stairs/ramps, balance, stoop, kneel, crouch, and crawl. She should never work around unprotected heights or hazardous machinery and [sh]ould avoid even concentrated exposure to extreme cold and heavy industrial vibration. She could perform simple and repetitive up to a reasoning level three with superficial contact with public and occasional contact with co-workers/supervisors [sic]. She could not perform fast-paced production type work.

Tr. 20.

At **step four**, the ALJ found Plaintiff was unable to perform her past relevant work. Tr. 23.

At **step five**, the ALJ found that, based on the testimony of the vocational expert, and considering Plaintiff's age, education, work experience, and RFC, Plaintiff could perform jobs that existed in significant numbers in the national economy, including the jobs of document preparer, final assembler, and package sealer. Tr. 24.

The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from the amended alleged onset date through the date of the decision. Tr. 25.

### VI. ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff raises the following issues for review (1) whether the ALJ properly evaluated the medical opinion evidence; (2) whether the ALJ conducted a proper step-three analysis; (3) whether the ALJ properly considered Plaintiff's subjective complaints; and (4) whether the ALJ conducted a proper step-five analysis.

### VII. DISCUSSION

**A.    Medical Opinion Evidence.**

Plaintiff alleges the ALJ erred by improperly evaluating the opinion of Whitney Fix-Lanes, D.O. ECF No. 21 at 10-14.

When a treating or examining physician's opinion is contradicted by another physician, the ALJ must offer "specific and legitimate" reasons to reject the opinion. *Andrews*, 53 F.3d at 1041; *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). The specific and legitimate standard can be met by the ALJ setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating their interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ is required to do more than offer her conclusions, she "must set forth [her] interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

On January 25, 2019, Dr. Fix-Lanes provided a medical report/statement on behalf of Plaintiff. Tr. 1301-02. Dr. Fix-Lanes noted Plaintiff's diagnosis of chronic midline low back pain with right sided sciatica. Tr. 1301. Dr. Fix-Lanes

reported Plaintiff's symptoms include lower back pain that "radiates down [the] right leg" and "numbness in right leg." *Id*. She indicated Plaintiff had to lie down during the day "10-20 minutes every 1-2 hours." *Id*. She noted Plaintiff's treatment including physical therapy, pain medication including gabapentin, meloxicam, oxycodone, acetaminophen, and topical gels, and noted that side effects from gabapentin and oxycodone limit Plaintiff's ability to operate machinery. *Id*. She opined "improvement with physical therapy is expected" *Id*. She further indicated that work on a regular and continuous basis would cause Plaintiff's condition to deteriorate, noting that "increase stress of lifting can worsen pain." Tr. 1302. She indicated that if Plaintiff attempted to work a 40-hour week it was more probable than not that she would miss 4 or more days per month due to medical impairments, noting "patient reports pain with activity." *Id*. She opined Plaintiff would likely be off task and unproductive during a 40-hour workweek 21-30 percent of the time "without therapy," and that her limitations have existed since 2016. *Id*. She noted Plaintiff "had multiple images of her spine, please refer to physical therapy notes." *Id*.

      The ALJ gave Dr. Fix-Lanes' opinion little weight because she offered little support for her opinion, had minimal history with Plaintiff and there are no treatment notes from her, and her opinion was inconsistent with the medical imaging and treatment notes of record, which showed only moderate limitations. Tr. 23. Plaintiff contends the ALJ erred by rejecting the treating doctor's opinion without explanation, rationale, or citation to the record; and that Dr. Fix-Lanes' opinion was supported by imaging and examination findings and the ALJ inserted her own lay opinion in place of the doctor's opinion. ECF No. 21 at 10-14. Defendant argues the ALJ reasonably gave less weight to Dr. Fix-Lanes' opinion because it lacked explanation and stood at odds with other medical evidence. ECF No. 26 at 15-19.

        The Court finds the ALJ did not err and gave specific and legitimate reasons to give Dr. Fix-Lanes' opinion less weight. First, the ALJ found Dr. Fix-Lanes offered little support for her opinion, and the lack of support for her opinion was compounded by her minimal history with Plaintiff and lack of treatment records. Tr. 23. An ALJ "need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted); "The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion." 20 C.F.R. § 416.927(c)(3); the longer a source has treated Plaintiff and the number of visits a Plaintiff had with a particular provider is also a relevant factor in assigning weight to an opinion. 20 C.F.R. § 416.927(c)(2)(i); and generally, the more knowledge a provider has about Plaintiff's impairment the more weight the medical opinion is due. 20 C.F.R. § 416.927(c)(2)(ii).

        Here, while Dr. Fix-Lanes pointed generally to previous imaging and other records to support her limitations, she did not explain how these records supported her opinion; she only noted that "she has multiple images of her spine please refer to physical therapy notes." Tr. 1302. However, she also opined that the percentage of time Plaintiff would be off task is "without therapy" and that "improvement with physical therapy is expected." Tr. 1301-02. The ALJ reasonably pointed out her limited history with Plaintiff, as she indicated she had first seen Plaintiff less than a month prior to completing the form. Additionally, a physician's opinion may be rejected if it is unsupported by the physician's treatment notes. *Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003). The ALJ pointed out there are no treatment notes from this provider to support her opinion, frequency of visits, or an ongoing treating relationship. These were specific and legitimate reasons to discount her opinion.

   The ALJ also concluded that Dr. Fix-Lanes' opinion was inconsistent with the longitudinal record. Tr. 23. An ALJ may reasonably consider the consistency of an opinion with the rest of the record. 20 C.F.R. § 416.927(c)(4). While Dr. Fitz-Lanes pointed generally to imaging and physical therapy records to support her opinion, the ALJ noted that Plaintiff had infrequently demonstrated weakness or positive straight leg raises, and consistently had normal gait upon exam. Tr. 21-22. The longitudinal record shows limited treatment was recommended by her providers for her back pain including physical therapy, which even Dr. Fitz-Lanes expected to improve her condition, and when epidural steroid injection was recommended, Plaintiff declined. *See e.g.*, Tr. 391, 385, 929, 1288-89. Notably, in 2016 Plaintiff reported physical therapy improved her ability to perform household tasks and activities of daily living, and in 2018 she was noted to walk without a limp, have soreness with standing, and negative straight leg raises; she reported she had not had physical therapy since 2016, and her provider suggested another trial of physical therapy at that time. Tr. 385, 1289. When she returned to physical therapy in December 2018, her therapist noted some reduced strength, but he also indicated that physical therapy would help her improve strength, range of motion, correct her posture, and "improve motor control and stability during functional activities in order to decrease pain and return to prior level of function." Tr. 1296.

   Further, although Dr. Fitz-Lanes' opinion describes symptoms including numbness, recent treatment notes from providers show no numbness in her legs; Dr. Fitz-Lanes also refers to Plaintiff's prescribed treatment for back pain including oxycodone, but this is inconsistent with the longitudinal record which shows her providers, including pain management specialists, consistently declined to prescribe opiates and recommend non-opiate pain management for her back pain. *See e.g.*, Tr. 407, 436, 961-62, 1024, 1288, 1298. At an office visit for back pain in December 2018, for example, around the time of Dr. Fitz-lanes' opinion, Plaintiff reported she was taking the oxycodone she had been prescribed for a

recent gynecological surgery, and that it helped her back pain; her doctor noted no one was managing her pain medication and declined to refill it, which is inconsistent with Dr. Fitz-Lanes' report a few days earlier that Plaintiff's treatment at that time for back pain included opiate pain medications. Tr. 1298. The ALJ's finding that Dr. Fitz-Lanes' opinion was inconsistent with the longitudinal record is supported by substantial evidence.

The ALJ also gave the medical expert testimony of Dr. Jahnke more weight than the opinion of Dr. Fix-Lanes. Tr. 22. At the hearing, Dr. Jahnke testified that Plaintiff's only severe (physical) impairment was degenerative disease of the lumbar spine. Tr. 44, 47. Dr. Jahnke opined Plaintiff did not meet or equal the listing for 1.04A, explaining that although she had pain radiating on the right side there was no gross evidence of nerve root compression or motor weakness. Tr. 47. Dr. Jahnke opined Plaintiff could occasionally lift and carry ten pounds and frequently lift and carry five pounds and that she had no limits in sitting and could stand and walk 30 minutes at a time for up to two hours in a workday. Tr. 47-48. In response to questions from Plaintiff's representative regarding evidence of positive straight leg raise testing, Dr. Jahnke testified that "[a] straight leg raise on the right but with radiation into the sacrum and buttocks. That is certainly pain. But it is not nerve root irritation"; and she acknowledged that while there were some findings on exam it was not enough, in her opinion, to meet or equal the listing. Tr. 49-50. Additionally, upon receipt of new evidence after the hearing including an MRI of the lumbar spine, on April 29, 2019, the ALJ forwarded the new evidence to Dr. Jahnke and asked her to review it and complete an interrogatory. Tr. 1322. On May 9, 2019, Dr. Jahnke indicated that the additional medical evidence did not change her opinion given in her testimony regarding the nature and severity of Plaintiff's impairments. Tr. 1324. The ALJ gave Dr. Jahnke's opinion substantial weight. Tr. 22.

An ALJ may discredit physicians' opinions that are unsupported by the record as a whole. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Additionally, an ALJ may credit the opinion of nonexamining expert who testifies at hearing and is subject to cross-examination. *See Andrews*, 53 F.3d at 1042 (citing *Torres v. Sec'y of H.H.S.,* 870 F.2d 742, 744 (1st Cir. 1989)). The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other evidence in the record and is consistent with it. *Andrews*, 53 F.3d at 1041. Further, an ALJ may consider a medical provider's familiarity with "disability programs and their evidentiary requirements" when evaluating a medical opinion. *Orn v. Astrue*, 495 F.3d 625, 631.

Here, as explained *supra*, Dr. Fitz-Lanes' opinion was inconsistent with the record as a whole, and the ALJ reasonably gave Dr. Jahnke's testimony more weight. The ALJ further noted Dr. Jahnke is a specialist in internal medicine, "she reviewed the entire medical record and is familiar with the Social Security Act, Listings and Regulations," and she had the opportunity to review post-hearing medical evidence and subsequently opined it did not change her opinion, and her opinion is consistent with the longitudinal record. Tr. 22.

The ALJ reasonably gave little weight to Dr. Fitz-Lanes' opinion because she offered little support for her opinion, she had minimal history with Plaintiff and there were no treatment records from her, and her opinion was inconsistent with the record as a whole, including the medical expert testimony of Dr. Jahnke. These were specific and legitimate reasons, supported by substantial evidence, to reject Dr. Fitz-Lanes' opinion. Even if the evidence could be interpreted more favorably to Plaintiff, if it is susceptible to more than one rational interpretation, the ALJ's ultimate conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). The ALJ's conclusions were reasonable, and Plaintiff is not entitled to remand on this issue.

### B.     Step Three.

Plaintiff argues the ALJ erred by failing to conduct an adequate analysis and failing to find Plaintiff disabled at step three. ECF No. 21 at 14-17. At step three of the sequential evaluation process, the ALJ considers whether one or more of the claimant's impairments meets or equals an impairment listed in Appendix 1 to Subpart P of the regulations. 20 C.F.R. § 416.920(a)(4)(iii). Each Listing sets forth the "symptoms, signs, and laboratory findings" which must be established for a claimant's impairment to meet the Listing. *Tackett*, 180 F.3d at 1099. If a claimant's condition meets or equals a Listing, the claimant is considered disabled without further inquiry. 20 C.F.R. § 416.920(d). "Listed impairments are purposefully set at a high level of severity because 'the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary.'" *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013) (citing *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990)).

"To *meet* a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim." *Tackett,* 180 F.3d at 1099 (emphasis in original); 20 C.F.R. § 416.925(d). "To *equal* a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment . . ." *Tackett*, 180 F.3d at 1099 (emphasis in original) (quoting 20 C.F.R. § 404.126(a)); 20 C.F.R. § 416.926(a). "If a claimant suffers from multiple impairments and none of them individually meets or equals a listed impairment, the collective symptoms, signs and laboratory findings of all of the claimant's impairments will be evaluated to determine whether they meet or equal the characteristics of any relevant listed impairment." *Id*. However, "[m]edical equivalence must be based on medical findings," and "[a] generalized assertion of functional problems is not enough to establish disability at step three." *Id*. at 1100 (quoting 20 C.F.R. § 404.1526(a)); 20 C.F.R. § 416.926(a).

The claimant bears the burden of establishing her impairment (or combination of impairments) meets or equals the criteria of a listed impairment. *Burch*, 400 F.3d at 683. Further, "[a]n adjudicator's articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3." SSR 17-2p, 2017 WL 3928306, at *4 (effective March 27, 2017).

Here, the ALJ found Plaintiff's impairments or combination of impairments did not meet or equal any listings, noting that while Plaintiff "demonstrated a few positive straight-leg raising tests, she has not consistently demonstrated gross motor weakness or sensation loss" and "the impartial medical expert opined the [Plaintiff's] impairments did not meet or medically equal listing 1.04." Tr. 19. Plaintiff argues the ALJ failed to conduct an adequate analysis including whether or not Plaintiff's impairment equaled a listing, failing to discuss evidence at step three, and failing to find the Plaintiff disabled at step three. ECF No 21 at 14-16. Dependent argues Plaintiff did not meet her burden to prove her back impairment met or medically equaled the criteria of listing 1.04A. ECF No 26 at 5-8.

The Court finds the ALJ did not err. There is no requirement that the ALJ's discussion of evidence must occur at the step three determination. *Lewis v. Apfel*, 236 F.3d 503, 513-14 (9th Cir. 2001) (finding that the ALJ "discussed and evaluated the evidence" that claimant did not meet a listing, even though that discussion did not take place "under the heading 'Findings'"). Here, under the step three finding the ALJ explained Plaintiff did not meet or equal the severity of any listed impairment, briefly noted findings related to listing 1.04, and also referenced the testimony of medical expert Dr. Jahnke, who opined at the hearing that Plaintiff did not meet or equal the criteria of Listing 1.04. Tr. 19. Factual findings later in the ALJ's decision describe evidence with sufficient specificity, including Dr.

Jahnke's testimony as discussed *supra*, adequately supporting the ALJ's step three determination throughout the decision.

The step three findings by the ALJ must also be read in conjunction with the entire ALJ decision. SSR 17-2p, 2017 WL 3928306, at *4. The ALJ relied on the testimony of the medical expert, which she gave substantial weight, as the foundation for her step three findings and the ALJ further explained this testimony and supporting evidence throughout the decision in discussing the medical records and medical opinions related to Plaintiff's back impairment. *See* Tr. 21-23. The ALJ's analysis in its entirety permits the Court to meaningfully review the ALJ's finding that Plaintiff's back impairment did not meet or equal the criteria of 1.04.

Further, courts will not find an ALJ has erred in determining whether combined impairments equal a listed impairment unless the Plaintiff has offered a "plausible theory" of medical equivalency. *See Kennedy*, 738 F.3d at 1176-77 (citing *Lewis*, 236 F.3d at 514). Here, Plaintiff has failed to articulate any of her impairments (or combination of impairments) meets or equals the criteria of any listed impairment and has not met the burden of demonstrating she meets or equals any listing.

Plaintiff is not entitled to remand on this basis. The ALJ's determination that Plaintiff's impairments did not meet or equal a listed impairment at step three is supported by substantial evidence.

C. **Subjective Complaints.**

Plaintiff contends the ALJ erred by improperly rejecting her subjective complaints. ECF No. 21 at 17-20. It is the province of the ALJ to make determinations regarding a claimant's subjective statements. *Andrews*, 53 F.3d at 1039. However, the ALJ's findings must be supported by specific, cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Once the claimant produces medical evidence of an underlying medical impairment, the ALJ may not discredit testimony as to the severity of an impairment merely because it is

unsupported by medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester*, 81 F.3d at 834. "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

The ALJ concluded Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. Tr. 21. The ALJ found Plaintiff's allegations were inconsistent with the longitudinal record, including objective evidence; records showed she improved with treatment; her allegations were inconsistent with her activities of daily living; and that she had reported she did not want to work. Tr. 21-22. Plaintiff argues the ALJ improperly rejected Plaintiff's subjective complaints. ECF No. 21 at 17-20. Defendant argues the ALJ reasonably interpreted the record and offered clear and convincing reasons for discounting Plaintiff's allegations of disability. ECF No. 26 at 9-15.

1. <u>***Inconsistent Objective Medical Evidence.***</u>

The ALJ found the medical record does not support Plaintiff's symptom claims. Tr. 2-23. Although it cannot serve as the sole ground for rejecting a claimant's symptom statements, objective medical evidence is a "relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ pointed to the generally unremarkable physical and mental status exams throughout the record that fail to support limitations to the extent alleged by Plaintiff. Tr. 21-22. The ALJ also credited the testimony of Dr. Jahnke, who reviewed the record in its entirety and

testified that although there were some objective findings to support Plaintiff's symptoms including radiating pain on the right side and evidence of degenerative disc disease, there was no gross evidence of nerve root compression or motor weakness; and she indicated this was still the case after reviewing the February 2019 MRI. Tr. 47-49, 1324. The ALJ also noted mental status exam findings have been generally within normal limits, with generally normal affect and mood. Tr. 21, *see e.g.*, Tr. 347, 354.

The ALJ's interpretation of the record is reasonable. While Plaintiff identifies objective findings that are supportive of her allegations, when the evidence can reasonably support either affirming or reversing a decision, the Court may not substitute its judgment for that of the Commissioner. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). Lack of support in the medical record, coupled with the additional reasons offered by the ALJ as discussed below, is a clear and convincing reason to give less weight to Plaintiff's subjective complaints.

### 2. *Improvement with Treatment/Failure to Follow Through with Treatment.*

The ALJ noted Plaintiff did not follow through with treatment recommendations, including epidural steroid injection, and noted that she improved with treatment including counseling and physical therapy. Tr. 21. The effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. § 416.913(c)(3); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations). Additionally, an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may be considered when evaluating the claimant's subjective symptoms. *Orn*, 495 F.3d at 638.

Here, the ALJ found that Plaintiff's arc of mental health treatment was not consistent with her allegations of disability, noting that she did not require inpatient treatment for her symptoms and her counseling notes are unremarkable; and the ALJ noted her mental and physical conditions improved with treatment when she followed treatment recommendations. Tr. 21. While Plaintiff alleges disabling mental health limitations, she has not received consistent mental health treatment; the ALJ noted Plaintiff reported she had learned several skills to help her cope and was ready to complete treatment in 2018. Tr. 21 (citing Tr. 965, 978). Further, while records show physical therapy helped her back pain, in 2018 she reported she had not been to physical therapy since 2016. Tr. 1288-89, *see e.g.*, Tr. 550, 557. While lumbar/SI joint epidural steroid injections were recommended, Plaintiff did not have the procedure. Tr. 558-559, 960-62, 1288. On this record, the ALJ reasonably concluded that Plaintiff's symptom claims were inconsistent with the arc of her mental health treatment, improvement with treatment, and failure to follow some treatment recommendations. These findings are supported by substantial evidence and are clear and convincing reasons to discount Plaintiff's symptom claims.

   **3.** ***Activities of Daily Living.***

The ALJ noted Plaintiff's allegations were not consistent with her activities of daily living noting "she is a mother to four children, including a new infant." Tr. 21. The ability to care for others without help has been considered an activity that may undermine claims of totally disabling pain. *Rollins*, 261 F.3d at 857. For care activities to serve as a basis for the ALJ to discredit a claimant's symptom claims, the record must identify the nature, scope, and duration of the care involved, showing that the care is "hands on" rather than a "one-off" care activity. *Trevizo v. Berryhill*, 871 F.3d 664, 675-76 (9th Cir. 2017). Here, the ALJ did not cite to any testimony or other evidence and did not further detail Plaintiff's childcare activities. Moreover, Plaintiff testified at the hearing that while she has

four children, one is her adult son who lives with her, and two are teenagers; she testified that they all help her with the housework and the baby. Tr. 63-67.

While care activities may rebut a claimant's symptom claims, the ALJ failed to provide any evidence that care-taking activities were inconsistent with her symptom claims. This reason is therefore not supported by substantial evidence. This error is harmless, however, because the ALJ identified other specific, clear, and convincing reasons to discount Plaintiff's symptom claims. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008); *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ("[S]everal of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record."); *Batson*, 359 F.3d at 1197 (holding that any error the ALJ committed in asserting one impermissible reason for claimant's lack of credibility did not negate the validity of the ALJ's ultimate conclusion that the claimant's testimony was not credible).

4.   ***Inconsistent Statements.***

Finally, the ALJ noted Plaintiff had not worked for many years, and that "[Plaintiff] herself indicated that she does not want to work." Tr. 22. An ALJ may consider inconsistent statements by a claimant in assessing her subjective statements. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). Records from 2016 and 2019 show Plaintiff reported she was a homemaker, was not looking for work, and did not want help finding employment or job training. Tr. 345, 1310. Such inconsistency is a reasonable factor for an ALJ to discuss in evaluating the reliability of a claimant's allegations of disabling impairments.

The Court finds the ALJ offered clear and convincing reasons for her assessment of Plaintiff's subjective reports. Plaintiff is not entitled to remand on these grounds.

### D. Step Five.

Plaintiff argues the ALJ erred at step five. ECF No. 21 at 20-21. At step five of the sequential evaluation analysis, the burden shifts to the Commissioner to establish that 1) the claimant can perform other work, and 2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran*, 700 F.3d at 389 (9th Cir. 2012). In assessing whether there is work available, the ALJ must rely on complete hypotheticals posed to a vocational expert. *Nguyen v. Chater,* 100 F.3d 1462, 1467 (9th Cir. 1996). The ALJ's hypothetical must be based on medical assumptions supported by substantial evidence in the record that reflects all of the claimant's limitations. *Osenbrook v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001). The hypothetical should be "accurate, detailed, and supported by the medical record." *Tackett*, 180 F.3d at 1101. The hypothetical that ultimately serves as the basis for the ALJ's determination, i.e., the hypothetical that is predicated on the ALJ's final RFC assessment, must account for all the limitations and restrictions of the claimant. *Bray*, 554 F.3d at 1228.

As discussed above, the ALJ's RFC need only include those limitations found credible and supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211,1217 (9th Cir. 2005) ("The hypothetical that the ALJ posed to the VE contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record."). "If an ALJ's hypothetical does not reflect all of the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *Id*. However, the ALJ "is free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence." *Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006). Therefore, the ALJ is not bound to accept as true the restrictions presented in a hypothetical question propounded by a claimant's counsel if they are not supported by substantial evidence. *Magallanes*, 881 F.2d at 756-57; *Martinez v. Heckler*, 807 F.2d 771, 773 (9th Cir. 1986). A claimant fails to

establish that a step five determination is flawed by simply restating an argument that the ALJ improperly discounted certain evidence, when the record demonstrates the evidence was properly rejected. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

Plaintiff contends the ALJ erred by relying on the vocational expert's response to an incomplete hypothetical. ECF No. 21 at 20-21. However, Plaintiff's argument assumes that the ALJ erred in her analysis of the medical opinion evidence. As addressed *supra*, the ALJ properly assessed the medical opinion evidence. The ALJ has the discretion to evaluate and weigh the evidence and the Plaintiff's alternative interpretation of the evidence does not undermine the ALJ's analysis. The ALJ did not err in assessing the RFC or finding Plaintiff capable of performing work existing in the national economy, and the RFC adequately addresses the medical opinions in this record.

Plaintiff is not entitled to remand on these grounds.

## VIII.  CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free of legal error and is affirmed. Therefore, **IT IS HEREBY ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 26**, is **GRANTED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 21**, is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Defendant and the file shall be **CLOSED**.

**IT IS SO ORDERED.**

DATED September 19, 2022.



_____
JAMES A. GOEKE
UNITED STATES MAGISTRATE JUDGE